UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUWAYNE JACKSON,<br><br>                           Plaintiff,<br><br>v.<br><br>D.PARAMO, L. ROMERO, G. VALDOVINOS, AND O. NAVARRO,<br><br>                           Defendants. | Case No.: 17CV882-CAB (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT WITH RESPECT TO DEFENDANT PARAMO**<br><br>**[ECF No. 25]** |

This Report and Recommendation is submitted to United States District Judge Cathy Ann Bencivengo pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and 72.3(f) of the United States District Court for the Southern District of California. For the following reasons, the Court **RECOMMENDS** that Defendants' motion to dismiss the claims against Warden Paramo be **GRANTED**.

## PROCEDURAL BACKGROUND

On May 2, 2017, Plaintiff Duwayne Jackson, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a complaint under the Civil Rights Act, 42 U.S.C. § 1983, against Defendants Paramo, Romero, Valdovinos, and Navarro alleging claims under the Eighth and

1

Fourteenth Amendments. ECF No. 1 ("Comp."). That same day Plaintiff filed a motion for leave to proceed *in forma pauperis*. ECF No. 2.

On June 14, 2017, Plaintiff filed a First Amended Complaint under the Civil Rights Act, 42 U.S.C. § 1983, against Defendants Paramo, Romero, Valdovinos, and Navarro alleging claims under the Eighth and Fourteenth Amendments. ECF No. 11 ("FAC") at 1-11. On June 19, 2017, Plaintiff filed a motion for appointment of counsel and on July 5, 2017, Plaintiff filed a motion for a temporary restraining order and preliminary injunction. ECF Nos. 9 and 13. On July 10, 2017, the Court issued an order granting Plaintiff's motion to proceed *in forma pauperis* and denying Plaintiff's motions for appointment of counsel and for a temporary restraining order and preliminary injunction. ECF No. 14.

On September 15, 2017, Plaintiff filed a motion for default judgment which was denied on September 22, 2017. ECF Nos. 23-24. On September 25, 2017, Defendants filed a motion to dismiss Plaintiff's FAC for failure to state a claim for which relief may be granted as to Defendant Warden Paramo. ECF No. 25 ("MTD"). Plaintiff opposed the motion on October 26, 2017. ECF No. 28 ("Oppo."). Plaintiff filed a supplemental document to Exhibit B of his opposition on November 8, 2017. ECF No. 30. Defendants did not file a reply. See Docket.

## COMPLAINT ALLEGATIONS

Plaintiff alleges that he was denied procedural due process and suffered cruel and unusual punishment in violation of his Eighth and Fourteenth Amendment rights. FAC. Plaintiff seeks (1) an injunction requiring that "prison officials place all inmates that are 'psychiatric return' inmate[s]/patients into administrative segregation for administrative review and not into general population," (2) damages in the amount of $400,000, (3) punitive damages in the amount of $350,000, and (4) mental and emotional damages in the amount of $300,000. FAC at 13.

Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the complaint, and must construe the complaint and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff. See Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).

### A. Count One

In the first count asserting a violation of the Eighth and Fourteenth Amendments, Plaintiff alleges that on July 26, 2016, while housed at the Richard J. Donovan Correctional Facility ("RJDCF"), he covered his cell window in an attempt to get the attention of the Mental Health Sergeant in charge of the Enhanced Outpatient Program ("EOP") in which he participated. FAC at 3. Plaintiff did this because he wanted to speak with the Sergeant about the fact that he was not receiving his one hot kosher meal each day as expected. Id. Instead, Defendant Navarro entered Plaintiff's cell, pointed his M-K9 Oleoresin Capsicum spray at Plaintiff, and ordered Plaintiff to be handcuffed. Id. Plaintiff explained to Defendant Navarro that he had a medical condition that required waist restraints as opposed to handcuffs, but Defendant Navarro responded by telling Plaintiff to "step out or I'm going to spray your black explicitive [sic]." Id. Plaintiff complied and was led to the shower where he was handcuffed and searched by Defendant Navarro while another officer searched his cell. Id. Plaintiff eventually was returned to his cell where he discovered there was missing property and his newly purchased television had been damaged. Id. at 4. Plaintiff submitted a CDCR 602 form which was denied and one week later, on August 2, 2016, Defendant Navarro charged Plaintiff with assault on a peace officer by means likely to cause great bodily injury. Id.

According to Plaintiff, Defendant Navarro falsely alleged that Plaintiff threw a trash can at him and attempted to head butt him. Id. Plaintiff explains that, in reality, Defendant Navarro ordered Plaintiff to pick up trash and when Plaintiff refused, Defendant Navarro activated his alarm, ordered Plaintiff to get in the prone position and place his hands behind his back, and then pulled Plaintiff to his feet all while ignoring Plaintiff's pleas for waist restraints in accordance with his injury and Doctor's orders. Id. at 4-5. While escorting Plaintiff down the stairs with Officer Delgado, Defendant Navarro tried to slam Plaintiff's face into the ground, but failed and then tripped in front of other inmates who began laughing. Id. at 5. This angered Defendant Navarro who pulled Plaintiff down by the neck and then placed his knee in Plaintiff's back. Id.

///

### B. Count Two

In the second count which also asserts a violation of the Eighth and Fourteenth Amendments, Plaintiff alleges that on January 13, 2017, Defendant Paramo was the warden at RJDCF who "[wa]s responsible for the custody, treatment, training, and discipline of all inmates under his charge." Id. at 6. He next alleges that he was housed in the Administrative Segregation Unit ("ASU") as a result of the August 2, 2016 incident with Defendant Navarro and that it is his understanding that an inmate is removed from the general population and placed in ASU when they present "an immediate threat to the safety of the inmates or others [] endangers institution security [,] or jeopardizes the integrity of an investigation of alleged serious misconduct, criminal activity or the safety of any person's." Id. Plaintiff explains that at various times throughout 2016 and 2017, he was transferred to other prison facilities to undergo mental health treatments. Id. at 6-7. When he returned to RJDCF from the Department State Hospital ("DSH") on September 29, 2016, Plaintiff asserts that he was required to go before the Institution Classification Committee ("ICC") before he could be released from ASU. Id. at 6. After meeting with the ICC, Plaintiff was given a new ASU placement order, however while this was occurring, Plaintiff was sent to alternative housing for mental health treatment and then sent to the California Men's Colony State Prison ("CMCSP") where he was given a mental health crisis bed. Id. At some point during this time period, Plaintiff's ASU placement order was suspended by the ICC. Id. at 7. Plaintiff was discharged from the mental health crisis bed on October 4, 2016, but did not receive clearance to return to RJDCF. Id. Plaintiff went before the ICC at CMCSP on October 13, 2016 and was informed by an Associate Warden of CMCSP that his previous ICC proceedings had no bearing on the ICC at the California Department of Corrections ("CDCR"). Id. Plaintiff then suffered another relapse and was readmitted into the DSH on December 2, 2016. After completing his treatment on January 13, 2016[1], Plaintiff returned to RJDCF. Id. Plaintiff states that he was very afraid as he did not want to return to

---

[1] The FAC states January 13, 2016, but the Court believes this to be a typo and that Plaintiff intended to write January 13, 2017.

4

Facility C where he had his August 2016 encounter with Defendant Navarro. Id. at 7. Plaintiff raised his safety concerns with Sergeant Kang stating that he was "set up" and improperly placed in ASU and that because of the incidents of August 2, 2016 with Defendant Navarro, he should not be placed in Facility C. Id. at 8. Despite this, Sergeant Kang "forced Plaintiff to be housed on Facility C." Id. Plaintiff concludes that

> Due to this, Defendant Paramo is responsible for my safety due to Defendants [sic] O. Navarro['s], alleged serious misconduct. Defendant Paramo is responsible for the life time injuries Plaintiff sustained within the use of unessary [sic] excessive force caused by Defendant L. Romero, and Defendant G. Valdovinos. Defendant Paramo owed Plaintiff, a legal duty of care and he breached that duty of care and due to this breach it caused plaintiff life time injury of wanton infliction of pain.

Id. at 8.

### C. Count Three

In his third and final count, asserting only an Eighth Amendment violation, Plaintiff alleges that on January 16, 2017, Defendant Romero refused to permit Plaintiff to have a kosher meal even though he knew Plaintiff had been approved for kosher meals. Id. at 9. Then, without provocation, Defendant Romero sprayed Plaintiff in the face with his M-K9 Oleoresin Capsicum spray causing Plaintiff to fall to the ground. Id. While Plaintiff lay on the ground, Defendants Romero and Valdovinos attacked Plaintiff by punching and kicking him, eventually breaking Plaintiff's left pinky finger and spraining his ankle. Id. Plaintiff was then handcuffed, in violation of the medical order requiring use of a waist restraint, pulled to his feet, and taken to Facility C. Id. At Facility C, Plaintiff repeatedly requested decontamination from the pepper spray and water to drink. Id. at 10. Plaintiff was denied both for several hours and refused medical attention. Id. As Plaintiff waited, he heard Defendant Valdovinos state "Yea we got one, Homie" and "yeah you hit my partner in the chest." Id. Plaintiff replied that he did not do anything to either officer. Id. Defendant Valdovinos then stated that the assault was "for what happened to Defendant O. Navarro." Id. Defendant Romero stated that Plaintiff should not have been returned to Facility C, will never be welcome in Facility C, and better not return. Id. After

5

waiting in the holding cell for three hours without medical attention, water, or a bathroom break, Plaintiff urinated and used the urine to rinse his face off. Id. at 11. Plaintiff was then escorted to Facility B (ASU) and permitted to shower. Id. Plaintiff was placed in a cell where he was later recorded on video about the alleged use of excessive force. Id. Plaintiff filed an appeal for the use of unnecessary force and violation of due process. Id.

## **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. See Fed. R. Civ. P. 12(b)(6). The issue is not whether the plaintiff ultimately will prevail, but whether he has properly stated a claim upon which relief could be granted. Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003). In order to survive a motion to dismiss, the plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). If the facts alleged in the complaint are "merely consistent with" the defendant's liability, the plaintiff has not satisfied the plausibility standard. Id. (quoting Twombly, 550 U.S. at 557). Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

When a plaintiff appears *pro se*, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt. See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002). This rule of liberal construction is "particularly important" in civil rights cases. Hendon v. Ramsey, 528 F. Supp. 2d 1058, 1073 (S.D. Cal. 2007) (citing Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992));

see also Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (stating that because "Iqbal incorporated the Twombly pleading standard and Twombly did not alter the courts' treatment of *pro se* filings; accordingly we continue to construe *pro se* filings liberally . . . ." This is particularly important where the petitioner is a *pro se* prisoner litigant in a civil matter). When giving liberal construction to a *pro se* civil rights complaint, however, the court is not permitted to "supply essential elements of the claim[] that were not initially pled." Easter v. CDC, 694 F. Supp. 2d 1177, 1183 (S.D. Cal. 2010) (quoting Ivey v. Bd. of Regents of the Univ. of Alaska, 673 F.2d 266, 268 (9th Cir. 1982)). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." Id. (quoting Ivey, 673 F.2d at 268).

The court should allow a *pro se* plaintiff leave to amend his or her complaint, "unless the pleading could not possibly be cured by the allegation of other facts." Ramirez v. Galaza, 334 F.3d 850, 861 (9th Cir. 2003) (internal quotation marks and citations omitted). Moreover, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." Ferdik, 963 F.2d at 1261.

To state a claim under § 1983, a plaintiff must allege facts sufficient to show that (1) a person acting under color of state law committed the conduct at issue, and (2) the conduct deprived the plaintiff of some "rights, privileges, or immunities" protected by the Constitution of the laws of the United States. 42 U.S.C. § 1983. To prevail on a § 1983 claim, "a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of the defendant." Harris v. Schriro, 652 F. Supp. 2d 1024, 1034 (D. Ariz. 2009) (citation omitted). A particular defendant is liable under § 1983 only when the plaintiff proves he participated in the alleged violation. Id.

///
///
///
///

7

## ANALYSIS

The FAC asserts three counts of constitutional violations allegedly occurring on three separate dates. FAC. As set forth above, Defendant Paramo is discussed only in Count Two of the FAC.[2] See supra at 2-6; see also FAC at 6-8. The essence of Count Two appears to be that on January 13, 2017, Plaintiff was returned to RJDCF and improperly placed in Facility C, rather than ASU. Plaintiff states that this housing placement made him afraid for his safety and Defendant Paramo, as the warden, is responsible for Plaintiff's injuries and pain. FAC at 6-8. Specifically, as to Defendant Paramo, Plaintiff alleges that "Defendant D. Paramo is the warden of Richard J. Donovan correctional facility. He is legally responsible for the operation of (RJDCF) and for the welfare of all the inmates of that prison." Id. at 2. Plaintiff also alleges "Defendant D. Paramo, who is the warden at Richard J. Donovan Correctional Facility [] is responsible for the custody, treatment, training and discipline of all inmates under his charge." Id. at 6. Finally, Plaintiff alleges that

> Defendant Paramo is responsible for [Plaintiff's] safety due to Defendants [sic] O. Navarro['s], alleged serious misconduct. Defendant Paramo is responsible for the life time injuries Plaintiff sustained within the use of unessary [sic] excessive force caused by Defendant L. Romero, and Defendant G. Valdovinos. Defendant Paramo owed plaintiff a legal duty of care and he breached that duty of care and due to this breach it caused plaintiff life time injury of wanton infliction of pain.

Id. at 8. Plaintiff does not provide any other facts or explanation for the claim or claims against Defendant Paramo.

Defendants contend that Plaintiff "seeks to impermissibly hold Warden Paramo vicariously liable under a respondeat superior theory for Defendants Valdovinos's and Romero's actions." MTD at 2. Defendants also contend that the FAC fails to identify the basis for Plaintiff's allegation of a due process violation by Defendant Paramo. Id. at 3. Defendants note that Plaintiff does

---

[2] The allegations made in Counts One and Three of Plaintiff's FAC do not mention Defendant Paramo. FAC at 1-13.

not allege, and the exhibits do not show, that Defendant Paramo participated in most of the ICC meetings regarding Plaintiff's placement in ASU. Id. at 3-4, Exhs. C and F-J. While there is one chrono from January 26, 2017 showing that Defendant Paramo was the chairperson of the committee that reviewed Plaintiff's placement in the ASU, the reason for Plaintiff's appearance in front of the committee was because he was accused of battery on a peace officer on July 16, 2017 after striking Defendant Romero in the chest when he informed Plaintiff that he was not on the kosher meal list. Id. at 4, Exh. M. The ICC elected to keep Plaintiff in the ASU so that Plaintiff could be issued a Rules Violation Report and referred to the District Attorney's Office for further action. Id. at 4-5. Defendants contend that this is the only time Defendant Paramo was involved in Plaintiff's placement in ASU and note that it occurred on January 26, 2017, ten days after Plaintiff was allegedly assaulted by Defendants Romero and Valdovinos. Id. at 5, Exh. M.

As an initial matter, the Court finds that Plaintiff's assertions in the FAC are too vague and conclusory to state a claim for a constitutional violation against Defendant Paramo. Easter, 694 F. Supp. 2d at 1183 ("Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss") (quoting Ivey, 673 F.2d at 268). Defendant Paramo only is mentioned in Claim Two but the last three sentences of Claim Two refer to allegations set forth in Claims One and Three and appear to indicate that Plaintiff asserts Defendant Paramo is responsible. However, Plaintiff does not provide any facts describing exactly what Defendant Paramo did to violate Plaintiff's rights; he merely states that Defendant Paramo was the RJDCF Warden and responsible for Plaintiff's safety. This is insufficient to state a claim against Defendant Paramo under either the Eighth or Fourteenth Amendments. Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570) (In order to survive a motion to dismiss, the plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). In addition, Plaintiff does not clearly state what type of Due Process violation he is asserting in Counts One and Two, nor what facts establish those violations, nor what Defendant Paramo did to cause those violations. Because Plaintiff does not provide sufficient facts to state a constitutional violation against Defendant Paramo, the Court **RECOMMENDS** that Defendants' motion to dismiss all claims against Defendant Paramo be

17cv882-CAB (BLM)

**GRANTED**. Because this is the first motion to dismiss and because it is not clear that Plaintiff cannot allege facts to support either a Due Process or excessive use of force claim, the Court **RECOMMENDS** that the claims be **DISMISSED WITH LEAVE TO AMEND** and the Court will address the specific deficiencies in the FAC. See Tucker v. City of Santa Monica, 2012 WL 2970587, at *1 (C.D. Cal. July 20, 2012) ("If a complaint is dismissed, a pro se litigant must be given leave to amend unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment.")(citing Karim–Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir.1988) and Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir.1987)); see also Morris v. Barra, 2013 WL 1190820, at *12 (S.D. Cal. Feb. 1, 2013) ("before a pro se civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies.") (citing Karim–Panahi, 839 F.2d at 623–24).

In his opposition, Plaintiff provides additional facts and details regarding his allegations against Defendant Paramo that were not included in his FAC. Oppo. While the Court cannot consider these fact in determining whether the FAC states a claim against Defendant Paramo, the Court will consider them in its analysis of Plaintiff's claims.[3] In his opposition, Plaintiff argues that on January 13, 2017, Defendant Paramo "was grossly negligent in supervising [his] subordinates" who were deliberately indifferent to Plaintiff's needs, violated Plaintiff's procedural

---

[3] Farr v. Paramo, 2017 WL 3583036, at *4 (S.D. Cal. Aug. 18, 2017) ("A court 'may not supply essential elements of the claim that were not initially pled.' Nor may a plaintiff supply missing elements in his opposition.") (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982) and (citing Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.")); see also Turner v. Cty. of San Diego, 2017 WL 2908807, at *3 (S.D. Cal. July 7, 2017) ("a court cannot consider as allegations facts Plaintiff asserts for the first time in his opposition."); and McCullock v. Tharratt, 2017 WL 1226874, at *6 (S.D. Cal. Jan. 20, 2017) ("while the new allegations may be considered by the Court in determining whether granting leave to amend is appropriate, the Court will not consider these new allegations in deciding whether Plaintiff's present Complaint states a claim against Defendants" because "facts raised for the first time in plaintiff's opposition papers should be considered by the court in determining whether to grant leave to amend or to dismiss the complaint with or without prejudice.")(quoting Broam v. Bogan, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003)).

due process rights, and subjected Plaintiff to cruel and unusual punishment. Id. at 2. Plaintiff also argues that as Warden, Defendant Paramo should have had policies in place protecting Plaintiff when he returned to RJDCF from his mental health treatment and allowing Plaintiff to remain in the ASU while his disciplinary case was pending. Id. at 2, 6. Plaintiff asserts that Defendant Paramo's failure to protect Plaintiff resulted in Plaintiff being assaulted by Defendants Valdovinos and Romero on January 16, 2017. Id. Plaintiff argues that Defendant Paramo was aware of the risk of harm to Plaintiff because Defendant Paramo knew about Defendant Navarro, Romero, and Valdovinos' inappropriate conduct with all prisoners in Facility C.[4] Id. at 3. Plaintiff further argues that Defendant Paramo was deliberately indifferent to the harm that Plaintiff would suffer because he failed to act despite having information that unconstitutional behavior was occurring. Id. at 5. Plaintiff concludes that Defendant Paramo's "involvement is clear as he is the CEO Warden and responsible for the custody, treatment, training, and discipline of all inmates under his charge." Id. at 6.

A prisoner may state a section 1983 claim under the Eighth Amendment against prison officials where the officials acted with "deliberate indifference" to the threat of serious harm. Leach v. Drew, 385 F. App'x. 699, 699-701 (9th Cir. 2010) (citing Berg v. Kincheloe, 794 F.2d 457, 459, 460-61 (9th Cir. 1986); Robins v. Prunty, 249 F.3d 862, 866 (9th Cir. 2001)). To assert an Eighth Amendment claim based on failure to prevent harm, a prisoner must satisfy two requirements: one objective and one subjective. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). Under the objective requirement, the inmate must show that he was incarcerated under conditions posing a substantial risk of serious harm. Id. A substantial risk of serious harm exists only when a "prison official's act or omission ... result[s] in denial of 'the minimal civilized

---

[4] Plaintiff argues that Defendant Paramo had knowledge of Defendants' inappropriate behavior toward Plaintiff because Plaintiff was interviewed regarding the unnecessary use of force by Defendant Navarro about five days after the August 2, 2016 incident and the interview was videotaped. Oppo. at 3. Plaintiff does not allege that Defendant Paramo saw the videotape or was present when he was interviewed. Id. In addition, Plaintiff explains that he filed numerous 602 appeals and a complaint to the Internal Affairs Office about staff misconduct so Defendant Paramo had to know about the misconduct. Id. at 4.

measure of life's necessities.'" Id. "To meet the objective element of an Eighth Amendment claim, a plaintiff must allege that he is actually at a substantial risk of harm, not simply that he believes he is at risk." Becker v. Cowan, 2008 WL 802933, at *11 (S.D. Cal. Mar. 21, 2008). Under the subjective requirement, the prisoner must allege facts which demonstrate that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. To prove knowledge of the risk, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Id. at 842.

Plaintiff alleges that being placed in Facility C caused him to be incarcerated under conditions posing a substantial risk of serious harm because the correctional officers who work in Facility C constantly engage in staff misconduct, and have previously subjected him to the use of excessive force. Oppo. at 3-4; see also FAC at 7-8. Plaintiff further alleges that the substantial risk of serious harm resulted in a denial of "the minimal civilized measure of life's necessities" because as a result of his placement in Facility C, he was subjected to an assault by Defendants Romero and Valdovinos that resulted in a broken finger, sprained ankle, busted blood vessel in his eye, and an agitated left wrist fracture. Farmer, 511 U.S. at 834; see also Oppo. at 6. These facts, if properly alleged, could satisfy the objective prong of an Eighth Amendment claim by alleging that Plaintiff was incarcerated under conditions posing a substantial risk of serious harm. See Becker v. Cowan, 2008 WL 802933, at *11 (S.D. Cal. Mar. 21, 2008) ("[a] substantial risk of being physically attacked, beaten, or raped is sufficiently serious to satisfy the objective element of an Eighth Amendment claim") (citing Farmer, 511 U.S. at 832)).

To establish the subjective prong, Plaintiff argues that Defendant Paramo (1) knew his subordinate officers were engaging in unconstitutional behavior and failed to stop it or otherwise protect Plaintiff, (2) was grossly negligent in supervising his subordinate officers, and (3) failed to perform his supervisory responsibilities. Oppo. Plaintiff asserts that Defendant Paramo knew that the correctional officers in Facility C were engaging in staff misconduct because numerous

complaints were filed against the officers and Defendant Paramo reviewed and signed off on at least one of Plaintiff's 602 forms complaining about the officers' behavior. Oppo. at 5; see also FAC at Exh. D. Plaintiff also argues that Defendant Paramo was aware of the dangers of placing Plaintiff in Facility C because Plaintiff received an ASU placement notice on September 29, 2016. Oppo. at 4.

Defendants contend that "the conclusory allegation that Warden Paramo would know, by virtue of his position, that Plaintiff would be mistreated if he was sent to Facility C is not plausible or entitled to the presumption of truth." MTD at 7. Defendants note that "Plaintiff is suing Warden Paramo entirely because of his position, rather than any personal involvement in causing his claimed injuries" which is insufficient to state a claim against Defendant Paramo. Id. at 8.

Government officials are not liable under § 1983 for their subordinates' unconstitutional conduct based on *respondeat superior* or another theory of vicarious liability, and plaintiff is required to plead that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." See Iqbal, 556 U.S. at 676; see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983)).

A supervisor may be individually liable under § 1983 "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989)). To be held liable, a supervisor need not be physically present when the alleged constitutional injury occurs nor be "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury." Starr, 652 F.3d at 1205 (citation omitted). Rather, the requisite causal connection is established when a supervisor "set[s] in motion a series of acts by others," or "knowingly refus[es] to terminate a series of acts by others which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury." Id. at 1207-08 (citation omitted). A supervisor may also be held liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates,

13

for his acquiescence in the constitutional deprivation," or "conduct that showed a reckless or callous indifference to the rights of others." Id. at 1208 (citation omitted). Additionally, a supervisor may be held liable if he implements a "policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Hansen, 885 F.2d at 646 (internal quotation marks and citation omitted).

Plaintiff's argument does not satisfy the requirements of the subjective prong. First, Plaintiff does not allege that Defendant Paramo was personally involved in either assault or in the use of excessive force. Instead, Plaintiff appears to be arguing that Defendant Paramo should have known that Plaintiff would be injured or attacked if required to return to Facility C because Warden Paramo knew about the inappropriate behavior of Defendants Navarro, Romero, and Valdovinos from Plaintiff's interview about the behavior, completed 602 appeal forms, and complaints lodged with the Internal Affairs Office. Oppo. at 3-4. However, the fact that Plaintiff filed complaints does not establish that (1) Defendant Paramo read the complaints, (2) the information in the complaints was an accurate account of what occurred, or (3) Defendant Paramo knew that housing Plaintiff in Facility C would create an excessive risk to Plaintiff's health or safety. Easter, 694 F. Supp. 2d at 1183 ("[v]ague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss") (quoting Ivey, 673 F.2d at 268). In addition, even if Defendant Paramo suspected that there was a possibility of a problem occurring if Plaintiff was housed in Facility C, theoretical risk of harm is insufficient to establish deliberate indifference. See Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987) ("mere threat" of possible harm does not violate the Eighth Amendment); see also Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (deliberate indifference requires showing of "more than a mere suspicion that an attack will occur."); Hernandez v. Schriro, 2011 WL 2910710, at *6 (D. Ariz. July 20, 2011) ("[w]hile theoretical risk is always possible, Farmer requires more—'conditions posing a substantial risk of serious harm.'"). Plaintiff also does not state facts that indicate that Defendant Paramo was involved in the decision to house Plaintiff in Facility C on January 13, 2017.

Second, the asserted facts do not support an inference that Defendant Paramo (1) "set

in motion" acts that resulted in others assaulting Plaintiff, (2) refused to terminate acts that he knew or reasonably should have known would cause others to assault Plaintiff, or (3) demonstrated "conduct that showed a reckless or callous indifference to the rights of others." See Starr, 652 F.3d at 1207-08. While Plaintiff argues that Defendant Paramo is liable for his "own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivation," Plaintiff does not identify any specific training or supervision by Defendant Paramo that indicated an acquiescence in the alleged constitutional deprivation or was otherwise unconstitutional. Instead, Plaintiff merely states that Defendant Paramo's "involvement is clear as he is the CEO Warden and responsible for the custody, treatment, training, and discipline of all inmates under his charge." Oppo. at 6. This vague and conclusory claim is insufficient to show the required causal link between Defendant Paramo's behavior and the alleged constitutional violation.

Finally, Plaintiff does not allege any facts indicating that Defendant Paramo implemented a "policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." Hansen, 885 F.2d at 646 (internal quotation marks and citation omitted). In fact, Plaintiff acknowledges that there is a policy in place requiring inmates who are a threat to other inmates, to the overall security of the facility, or who are likely to jeopardize an investigation of serious misconduct/criminal activity, should be placed into ASU (as Plaintiff was), and he does not argue that this policy is a repudiation of constitutional rights or explain why it is unconstitutional. FAC at 6. Even if Plaintiff had alleged that the policy is unconstitutional, he has not demonstrated Defendant Paramo's responsibility for the policy or attributed the policy to Defendant Paramo in any way. Plaintiff is seeking to have a new policy implemented that will require "prison officials place all inmates that are 'psychiatric return' inmate[s]/patients into administrative segregation for administrative review and not into general population." However, Plaintiff fails to allege that the current policy or lack of the policy he is seeking is a repudiation of constitutional rights. Id. at 13. Moreover, Plaintiff admits that his fear of returning to Facility C was due to his alleged interactions with Defendant Navarro, and was unrelated to the fact that he was returning from psychiatric treatment. Id. at 8. Therefore

15

it is unclear that the policy he is seeking to implement would have prevented his alleged constitutional violations.

Plaintiff's arguments have not shown a causal link between Defendant Paramo and any constitutional violation. See Henry v. Sanchez, 923 F. Supp. 1266, 1272 (C.D. Cal. 1996) ("A supervisory official, such as a warden, may be liable under Section 1983 only if he was personally involved in the constitutional deprivation, or if there was a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation."). Therefore, even if the Court were able to consider the additional allegations contained in Plaintiff's opposition, Plaintiff does not meet the subjective requirement of an Eighth Amendment deliberate indifference to safety claim. Because Plaintiff has not satisfied the subjective requirement for his deliberate indifference claim, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's Eighth Amendment claim of deliberate indifference to his safety against Defendant Warden Paramo be **GRANTED WITH LEAVE TO AMEND**. See Ramirez, 334 F.3d at 861 (court must grant a *pro se* plaintiff leave to amend his complaint "unless the pleading could not possibly be cured by the allegation of other facts") (citing Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc)). The Court also **RECOMMENDS** that Defendants' motion to dismiss the Fourteenth Amendment claims against Defendant Paramo be **GRANTED WITH LEAVE TO AMEND**. Id.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an order: (1) approving and adopting this Report and Recommendation and (2) granting Defendants' Motions to Dismiss Defendant Paramo with leave to amend.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than February 23, 2018**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with this Court and served on all parties **no later than March 16, 2018**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on

appeal of the Court's order.  See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998).

Dated: 1/26/2018

Hon. Barbara L. Major
United States Magistrate Judge