UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DUWAYNE JACKSON,

           Plaintiff,

v.

D.PARAMO, L. ROMERO, G. VALDOVINOS,
O. NAVARRO, L. CORONADO, T. GEISINGER,
D. CLAYTON, AND M. DEEL

         Defendants.

Case No.:  17CV882-CAB (BLM)

**REPORT AND RECOMMENDATION FOR ORDER:**

**GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AS TO DEFENDANT PARAMO**

**[ECF No. 42]**

**AND**

**GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AS TO DEFENDANTS CORONADO, CLAYTON, AND DEEL**

**[ECF No. 62]**

**AND**

**GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AS TO DEFENDANT GEISINGER**

**[ECF No. 69]**

This Report and Recommendation is submitted to United States District Judge Cathy Ann Bencivengo pursuant to 28 U.S.C. § 636(b) and Civil Local Rules 72.1(c) and 72.3(f) of the United States District Court for the Southern District of California.  For the following reasons, the Court **RECOMMENDS** that Defendants' motion to dismiss the claims against Warden Paramo be **GRANTED WITHOUT LEAVE TO AMEND**.  The Court further **RECOMMENDS** that Defendants' motion to dismiss the claims against Defendants Coronado, Clayton, and Deel be **GRANTED WITH LEAVE TO AMEND**.  Finally, the Court **RECOMMENDS** that Defendant's motion to dismiss the claims against Defendant Geisinger be **GRANTED WITH LEAVE TO AMEND**.

## PROCEDURAL BACKGROUND

On May 2, 2017, Plaintiff Duwayne Jackson, a state prisoner proceeding *pro se* and *in forma pauperis*, filed a complaint under the Civil Rights Act, 42 U.S.C. § 1983, against Defendants Paramo, Romero, Valdovinos, and Navarro alleging claims under the Eighth and Fourteenth Amendments.  ECF No. 1 ("Comp.").   That same day, Plaintiff filed a motion for leave to proceed *in forma pauperis*.  ECF No. 2.

On June 14, 2017, Plaintiff filed a First Amended Complaint under the Civil Rights Act, 42 U.S.C. § 1983, against Defendants Paramo, Romero, Valdovinos, and Navarro alleging claims under the Eighth and Fourteenth Amendments.  ECF No. 11 ("FAC") at 1-11.  On June 19, 2017, Plaintiff filed a motion for appointment of counsel and on July 5, 2017, Plaintiff filed a motion for a temporary restraining order and preliminary injunction.  ECF Nos. 9 and 13.  On July 10, 2017, the Court issued an order granting Plaintiff's motion to proceed *in forma pauperis* and denying Plaintiff's motions for appointment of counsel and for a temporary restraining order and preliminary injunction.  ECF No. 14.

On September 15, 2017, Plaintiff filed a motion for default judgment which was denied on September 22, 2017.  ECF Nos. 23-24.  On September 25, 2017, Defendants filed a motion to dismiss Plaintiff's FAC for failure to state a claim for which relief may be granted as to Defendant Warden Paramo.  ECF No. 25.  Plaintiff opposed the motion on October 26, 2017. ECF No. 28.  Plaintiff filed a supplemental document to Exhibit B of his opposition on November

8, 2017.  ECF No. 30.  Defendants did not file a reply.  <u>See</u> Docket.  On January 26, 2018, the Court issued a Report and Recommendation for Order Granting Defendants' motion to dismiss Plaintiff's FAC with respect to Defendant Paramo.  ECF No. 31.  On March 28, 2018, District Judge Cathy Anne Bencivengo issued an Order Adopting Report and Recommendation and granting Plaintiff leave to amend his complaint.  ECF No. 39.

On February 28, 2018, Plaintiff filed a Second Amended Complaint ("SAC") under the Civil Rights Act, 42 U.S.C. § 1983, against Defendants Paramo, Romero, Valdovinos, Navarro, Coronado, Geisinger, Clayton, and Deel alleging claims under the Eighth and Fourteenth Amendments.  ECF No. 37.  On April 26, 2018, Defendants filed a motion to dismiss the SAC for failure to state a claim for which relief may be granted as to Defendant Paramo and Plaintiff's Due Process claim.  ECF No. 42-1 ("MTD1").  On July 2, 2018, Plaintiff opposed Defendants' motion to dismiss.  ECF No. 58 ("Oppo.1").  Defendants did not file a reply.  <u>See</u> Docket.

On July 9, 2018, Defendants filed a motion to dismiss Plaintiff's SAC for failure to state a claim for which relief may be granted as to Defendants Clayton, Coronado, and Deel.  ECF No. 62-1 ("MTD2").  Plaintiff opposed the motion on August 16, 2018.  ECF No. 71 ("Oppo.2").  Defendants did not file a reply.  <u>See</u> Docket.

On July 30, 2018, Defendant Geisinger filed a motion to dismiss Plaintiff's SAC for failure to state a claim for which relief may be granted.  ECF No. 69-1 ("MTD3").  Plaintiff opposed the motion on August 16, 2018.  ECF No. 72 ("Oppo.3").  Defendants filed a reply on September 24, 2018.  <u>See</u> ECF No. 76 ("Reply").

## **GENERAL COMPLAINT ALLEGATIONS**

Plaintiff alleges that he was denied procedural due process and suffered cruel and unusual punishment in violation of his Eighth and Fourteenth Amendment rights.  SAC.  Plaintiff seeks (1) an injunction requiring that "Richard J. Donovan Prison correctional staff research [i]nmates returning from other [i]nstitutions case factors and unclassified inmates who [sic] case factors warrant continued segregation not be placed into serious risk of harm," (2) injunctive relief requiring Defendants to provide Plaintiff with narcotic pain relief medication, a cat scan, an appointment with an orthopedic surgeon, and whatever treatment the orthopedic surgeon

recommends, (3) damages in the amount of $400,000, (4) punitive damages in the amount of $350,000, (5) mental and emotional damages in the amount of $300,000, and (6) declaratory relief.  Id. at 22-23.

Because this case comes before the Court on a motion to dismiss, the Court must accept as true all material allegations in the complaint, and must construe the complaint and all reasonable inferences drawn therefrom in the light most favorable to Plaintiff.  See Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).

## **LEGAL STANDARD**

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's claims. See Fed. R. Civ. P. 12(b)(6).  The issue is not whether the plaintiff ultimately will prevail, but whether he has properly stated a claim upon which relief could be granted.  Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003).  In order to survive a motion to dismiss, the plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).  If the facts alleged in the complaint are "merely consistent with" the defendant's liability, the plaintiff has not satisfied the plausibility standard.  Id. (quoting Twombly, 550 U.S. at 557).  Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678 (citing Twombly, 550 U.S. at 556).

When a plaintiff appears *pro se*, the court must be careful to construe the pleadings liberally and to afford the plaintiff any benefit of the doubt.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).  This rule of liberal

4

construction is "particularly important" in civil rights cases. <u>Hendon v. Ramsey</u>, 528 F. Supp. 2d 1058, 1073 (S.D. Cal. 2007) (citing <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992)); <u>see also</u> <u>Hebbe v. Pliler</u>, 627 F.3d 338, 342 (9th Cir. 2010) (stating that because "Iqbal incorporated the Twombly pleading standard and Twombly did not alter the courts' treatment of *pro se* filings; accordingly we continue to construe *pro se* filings liberally . . . ." This is particularly important where the petitioner is a *pro se* prisoner litigant in a civil matter). When giving liberal construction to a *pro se* civil rights complaint, however, the court is not permitted to "supply essential elements of the claim[] that were not initially pled." <u>Easter v. CDC</u>, 694 F. Supp. 2d 1177, 1183 (S.D. Cal. 2010) (quoting <u>Ivey v. Bd. of Regents of the Univ. of Alaska</u>, 673 F.2d 266, 268 (9th Cir. 1982)). "Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss." <u>Id.</u> (quoting <u>Ivey</u>, 673 F.2d at 268).

The court should allow a *pro se* plaintiff leave to amend his or her complaint, "unless the pleading could not possibly be cured by the allegation of other facts." <u>Ramirez v. Galaza</u>, 334 F.3d 850, 861 (9th Cir. 2003) (internal quotation marks and citations omitted). Moreover, "before dismissing a pro se complaint the district court must provide the litigant with notice of the deficiencies in his complaint in order to ensure that the litigant uses the opportunity to amend effectively." <u>Ferdik</u>, 963 F.2d at 1261.

To state a claim under § 1983, a plaintiff must allege facts sufficient to show that (1) a person acting under color of state law committed the conduct at issue, and (2) the conduct deprived the plaintiff of some "rights, privileges, or immunities" protected by the Constitution of the laws of the United States. 42 U.S.C. § 1983. To prevail on a § 1983 claim, "a plaintiff must demonstrate that he suffered a specific injury as a result of specific conduct of a defendant and show an affirmative link between the injury and the conduct of the defendant." <u>Harris v. Schriro</u>, 652 F. Supp. 2d 1024, 1034 (D. Ariz. 2009) (citation omitted). A particular defendant is liable under § 1983 only when the plaintiff proves he participated in the alleged violation. <u>Id.</u>

///

///

# I. <u>MOTION TO DISMISS DEFENDANT PARAMO & DUE PROCESS CLAIM ECF No. 42</u>

Plaintiff alleges that Defendant Paramo denied him procedural due process and inflicted cruel and unusual punishment in violation of Plaintiff's Eighth and Fourteenth Amendment rights. SAC at 7-8, 13, 17. Defendants seek to dismiss Plaintiff's SAC for failure to state a claim for which relief may be granted as to Defendant Paramo and Plaintiff's due process claim. MTD1. Plaintiff's opposition is a summary of legal standards for motions to dismiss and *pro se* pleadings. Oppo.1.

## A. Complaint Allegations Regarding Defendant Paramo

Plaintiff claims that on July 26, 2016, while housed at the Richard J. Donovan Correctional Facility ("RJDCF"), he covered his cell window in an attempt to get the attention of the Mental Health Sergeant in charge of the Enhanced Outpatient Program ("EOP") in which he participated. SAC at 4. Plaintiff did this because he wanted to speak with the Sergeant about the fact that he was not receiving his one hot kosher meal each day as expected. <u>Id.</u> Instead, Defendant Navarro entered Plaintiff's cell, pointed his M-K9 Oleoresin Capsicum spray at Plaintiff, and ordered Plaintiff to be handcuffed. <u>Id.</u> Plaintiff explained to Defendant Navarro that he had a medical condition that required waist restraints as opposed to handcuffs, but Defendant Navarro responded by telling Plaintiff to "step out" or get sprayed. <u>Id.</u> Plaintiff complied and was led to the shower where he was handcuffed and searched by Defendant Navarro while another officer searched his cell. <u>Id.</u> Plaintiff eventually was returned to his cell where he discovered there was missing property and his newly purchased television had been damaged. <u>Id.</u> at 5. Plaintiff submitted a CDCR 602 form which was denied at all levels. <u>Id.</u> One week later, on August 2, 2016, Plaintiff threw another cold meal that he received on the ground and threw a trash can about 30 to 40 feet away from where Defendant Navarro sat. <u>Id.</u> Plaintiff was handcuffed, placed in a choke hold, and subjected to unnecessary force before being taken to the C-Yard facility gym and ultimately charged with assault on a peace officer by means likely to cause great bodily injury. <u>Id.</u> at 5-7.

When he was placed in the C-Yard on August 2, 2016, Plaintiff exhibited mental health

symptoms and became suicidal. Id. at 7. Shortly thereafter, Plaintiff was placed in a mental health crisis bed in the Administrative Segregation Unit ("ASU") where he complained of the incident with Defendant Navarro. Id. Plaintiff's complaint was videotaped by Sergeant Kang who distributed the tape to the Institutional Executive Review Committee ("IERC"), a group of staff who are tasked with reviewing all complaints of excessive force. Id. at 7. Defendant Paramo, the Warden at RJDCF, was a member of the IERC at the time Plaintiff's complaint was made. Id. at 7-8. Plaintiff alleges that Defendant Paramo violated his right to be free from cruel and unusual punishment

> by his failure to adequately train custody staff in the appropriate use of force in the determination of an inmate[']s need for mental health crisis support and in the appropriate manner to facility [sic] such support, by his failure to supervise the other defendants and by his failure to investigate the incident or discipline the defendant.

Id. at 8. Plaintiff alleges that Defendant Paramo was aware of Defendant Navarro's wrongful behavior because Defendant Navarro was under investigation and that Defendant Paramo knew or should have known that Defendant Navarro's "conduct, attitudes and actions created an unreasonable risk of serious harm to Plaintiff." Id. Plaintiff also alleges that due to Defendant Paramo's failure to ensure Plaintiff's right to be free from cruel and unusual punishment, Plaintiff has suffered irreparable harm including "pain and suffering, shame, humiliation, degradation, emotional distress, embarrassment, mental distress and other injuries." Id.

On August 31, 2016, Plaintiff was moved to the Medical Facility Department Mental Hospital ("DMH") in Vacaville, California. Id. at 11. After a September 6, 2016 Classification Committee Hearing, Plaintiff's Department of Health designation was reinstated, his custody level was lowered from maximum to medium(A), and he was released from ASU. Id. at 11, Exh. G. When he returned to RJDCF from the DMH on September 26, 2016, Plaintiff asserts that he was placed back into the ASU in a mental health crisis bed alternative in the B Facility until September 29, 2016 when he was served with an ASU placement notice stemming from his prior incident with Defendant Navarro. Id. at 11, Exh. H. After receiving the notice, Plaintiff was transferred to alternative housing for mental health treatment and then sent to the California

17cv882-CAB (BLM)

Men's Colony State Prison ("CMCSP") where he was given a mental health crisis bed. Id. at 11. Plaintiff was discharged from the mental health crisis bed on October 4, 2016 and placed into the CMCSP Enhanced Outpatient Program Hub Mental Health Patients ASU. Id. On October 13, 2016 Plaintiff attended a hearing before the ASU Classification Committee at CMCSP where Plaintiff complained to the Associate Warden of CMCSP about being released from ASU while placed at the DMH. Id. at 12. Warden D. Samuel informed Plaintiff that his previous ICC proceedings had no bearing on the ICC at DMH which was only so that Plaintiff "could possibly program at DMH." Id.

On December 2, 2016, Plaintiff was released from ASU and his work and privilege group custody level were reinstated. Id. at 12-13, Exh. K. On January 13, 2017, Plaintiff returned to RJDCF where he was terrified of returning to Facility C. Id. at 13, 15. After being sent to Facility C, on January 16, 2017, Plaintiff alleges that he was "brutaly [sic] beaten due to exercising his constitutional rights against Defendant Navarro by Defendants Romero [and] Valdovinos." Id. at 13. Plaintiff alleges that Defendant Paramo violated his right to be free from cruel and unusual punishment by failing to "adequately train custody staff in the appropriate use of California Code of Regulations Title 15 administrative Segregation Section 3355" and that Defendant Paramo's "reckless disregard of training his subordinates lead to procedural due process violations when Plaintiff complained he was fearful for his health and safety which created an unreasonable risk of serious harm to Plaintiff." Id. Plaintiff alleges that Defendant Paramo was on notice about the abusive conduct of Defendants Navarro, Romero, and Valdovinos because there were numerous complaints and grievances filed against them, but Defendant Paramo failed to take proper disciplinary action against them or otherwise control their behavior. Id. at 14. After his beating and pepper spraying, Plaintiff alleges that he repeatedly requested decontamination from the pepper spray and water to drink, but was denied both for several hours and was refused medical attention. Id. at 17. Plaintiff alleges that Defendant Paramo violated his right to be free from cruel and unusual punishment by failing

> to adequately train custody staff in the appropriate use of force, [r]ights and respect of others to be treated respectfully, impartially and fairly by employees

8

support and in the appropriate manner to facilitate such support, by his failure to supervise the other defendants and his failure to properly investigate the incident or discipline the other defendants.

Id.

Finally, Plaintiff alleges that Defendant Paramo

[k]new or should have known that his conduct, attitudes, and actions created an unreasonable risk of serious harm to Plaintiff. Despite this knowledge Defendant Paramo, failed to take reasonable steps to protect Plaintiff to ensure his Constitutional right to be free from cruel and unusual punishment while he was in defendants['] care and custody at Richard J. Donovan Correctional facility.

Id. at 20.

## B. Analysis

Plaintiff alleges that Defendant Paramo violated his right to due process and his right to be free from cruel and unusual punishment by failing to adequately supervise his subordinates. SAC at 9, 10, 13. Defendants contend that Plaintiff's SAC against Defendant Paramo should be dismissed because "Plaintiff improperly seeks to hold [Defendant Paramo] liable under a theory of respondeat superior." MTD1 at 9. Defendants also contend that Plaintiff's SAC fails to demonstrate personal involvement on the part of Defendant Paramo in the alleged use of excessive force against Plaintiff in August 2016 and January 2017. Id. Plaintiff's opposition is a summary of legal standards for motions to dismiss and *pro se* pleadings. Oppo.1.

A prisoner may state a section 1983 claim under the Eighth Amendment against prison officials where the officials acted with "deliberate indifference" to the threat of serious harm. Leach v. Drew, 385 F. App'x. 699, 699-701 (9th Cir. 2010) (citing Berg v. Kincheloe, 794 F.2d 457, 459, 460-61 (9th Cir. 1986); Robins v. Prunty, 249 F.3d 862, 866 (9th Cir. 2001)). To assert an Eighth Amendment claim based on failure to prevent harm, a prisoner must satisfy two requirements: one objective and one subjective. See Farmer v. Brennan, 511 U.S. 825, 834 (1994). Under the objective requirement, the inmate must show that he was incarcerated under conditions posing a substantial risk of serious harm. Id. A substantial risk of serious harm exists only when a "prison official's act or omission ... result[s] in denial of 'the minimal civilized

measure of life's necessities.'" Id. "To meet the objective element of an Eighth Amendment claim, [a] [p]laintiff must allege that he is actually at a substantial risk of harm, not simply that he believes he is at risk." Becker v. Cowan, 2008 WL 802933, at *11 (S.D. Cal. Mar. 21, 2008). Under the subjective requirement, the prisoner must allege facts which demonstrate that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. To prove knowledge of the risk, the prisoner may rely on circumstantial evidence; in fact, the very obviousness of the risk may be sufficient to establish knowledge. Id. at 842.

1.   Objective Prong

In the Court's first Report and Recommendation, the Court provided a lengthy summary of the law governing Plaintiff's claim against Defendant Paramo. See ECF No. 31 at 8-16. That law continues to govern Plaintiff's current claim against Defendant Paramo. In the first Report and Recommendation, the Court found that Plaintiff had satisfied the objective requirement of alleging that he was incarcerated under conditions posing a substantial risk of serious harm and denied of "the minimal civilized measure of life's necessities." Id. at 12; see also Farmer, 511 U.S. at 834.

Plaintiff's allegations in the SAC continue to satisfy the objective requirement as he alleges that his placement in Facility C posed a substantial risk of serious harm because the officers in Facility C are known to engage in staff misconduct and have previously subjected him to excessive force. SAC at 10-11, 13. Plaintiff further alleges that when he was placed in Facility C, he was assaulted by Defendants Romero and Valdovinos and left with a broken pinky finger and injured ankle, eye, and hand. Id. at 13, 18-19; see also Farmer, 511 U.S. at 834. These facts, if properly alleged, could satisfy the objective prong of an Eighth Amendment claim. See Becker, 2008 WL 802933 at *11 ("[a] substantial risk of being physically attacked, beaten, or raped is sufficiently serious to satisfy the objective element of an Eighth Amendment claim") (citing Farmer, 511 U.S. at 832)).

///

2. <u>Subjective Prong</u>

In the Court's first Report and Recommendation, the Court explained to Plaintiff that he failed to satisfy the subjective prong of a deliberate indifference to safety claim against Defendant Paramo because (1) "Plaintiff does not allege that Defendant Paramo was personally involved in either assault or in the use of excessive force," (2) "even if Defendant Paramo suspected that there was a possibility of a problem occurring if Plaintiff was housed in Facility C, theoretical risk of harm is insufficient to establish deliberate indifference," (3) "Plaintiff [] does not state facts that indicate that Defendant Paramo was involved in the decision to house Plaintiff in Facility C on January 13, 2017," (4) "the asserted facts do not support an inference that Defendant Paramo [] 'set in motion' acts that resulted in others assaulting Plaintiff, [] refused to terminate acts that he knew or reasonably should have known would cause others to assault Plaintiff, or [] demonstrated 'conduct that showed a reckless or callous indifference to the rights of others,'" (5) "Plaintiff does not identify any specific training or supervision by Defendant Paramo that indicated an acquiescence in the alleged constitutional deprivation or was otherwise unconstitutional," and (6) "Plaintiff does not allege any facts indicating that Defendant Paramo implemented a 'policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'" ECF No. 31 at 14-16. Judge Bencivengo noted that there were no objections to the Report and Recommendation, found "the Report to be thorough, complete, and an accurate analysis of the legal issues presented in the motion to dismiss[,]" and gave Plaintiff an opportunity to amend his complaint as to the Eighth and Fourteenth Amendment claims with respect to Defendant Paramo. ECF No. 39 at 2.

Plaintiff's SAC does not fix any of the inadequacies identified by the Court in the FAC. The SAC does not state facts that indicate that Defendant Paramo (1) was personally involved in Plaintiff's constitutional deprivation, (2) set in motion a series of unconstitutional acts by others, (3) exhibited "conduct that showed a reckless or callous indifference to the rights of others," or (4) implemented a "policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." <u>Starr</u>, 652 F.3d at 1207-1208. Nor does the SAC allege a causal connection between Defendant Paramo's conduct

17cv882-CAB (BLM)

and the alleged constitutional violation either by showing that Defendant Paramo "knowingly refused to terminate a series of acts by others which [he] knew or reasonably should have known would cause others to inflict a constitutional injury" or that Defendant Paramo's "culpable action or inaction in the training, supervision, or control of his subordinates [demonstrated] his acquiescence in the constitutional deprivation." Id.

Plaintiff's SAC does include some new allegations regarding Defendant Paramo, however those allegations fall short of satisfying the subjective prong. Plaintiff claims that Defendant Paramo violated his rights by failing to investigate the alleged incidents, however, this claim is undercut by his exhibits[1] and SAC which show that Plaintiff's allegations were investigated and found to be meritless. SAC at 8 ("Defendant Navarro was undergoing investigation prior to both incidents"), 10 (Plaintiff noting that he was interviewed on video after complaining about the excessive use of force and that the tape was reviewed by the Institutional Executive Review Committee), 12 ("Defendant Paramo, attended the "IERC" [during] which he viewed the video recording of Plaintiff"), Exh. D at 44-45 ("A review of the allegation of staff misconduct presented in the written complaint has been completed . . . your appeal is being processed as an Appeal Inquiry"), and Exh. K at 79-80 ("The Appeal Inquiry is complete/ has been reviewed and all issues were addressed. You have failed to provide corroborative evidence/documentation to

_____

[1]See Easter, 694 F. Supp. 2d at 1183 ("[w]hen a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper ....") (quoting Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995) (citing Cooper v. Bell, 628 F.2d 1208, 1210 n. 2 (9th Cir.1980))); see also Givens v. Miller, 2017 WL 840658, at *2 (S.D. Cal. Mar. 3, 2017) (a "court may 'consider certain materials–documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice–without converting the motion to dismiss into a motion for summary judgment'" and "Materials submitted as part of the complaint are not considered 'outside' the complaint and may be considered" on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)) (quoting United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003)) and (quoting Butler v. Los Angeles County, 617 F. Supp. 2d 994, 999 (C.D. Cal. 2008) (citing Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990) (material properly submitted as part of the complaint may be considered))).

substantiate your claims regarding Officer Romero assaulted you and caused you harm" and "The following witnesses were questioned on February 16, 2017: Correctional Officers Romero and Valdovinos. You have failed to identify any inmate witnesses.").

Plaintiff again argues that Defendant Paramo should have known that Plaintiff faced an excessive risk to his health and safety because Defendant Paramo failed to adequately train his staff and because his staff had a history of complaints and grievances filed against them. SAC. However, as was explained in the Court's January 26, 2018 Report and Recommendation, the fact that complaints or grievances were filed against Defendants Navarro, Romero, and Valdovinos does not establish that

> (1) Defendant Paramo read the complaints, (2) the information in the complaints was an accurate account of what occurred, or (3) Defendant Paramo knew that housing Plaintiff in Facility C would create an excessive risk to Plaintiff's health or safety.

ECF No. 31 at 14. Plaintiff does not include any new facts in his SAC that change this conclusion. SAC. Plaintiff references the exhibits attached to his SAC, however, a review of the exhibits reveals that they do not support Plaintiff's allegations. The first document is an Inmate/Parolee Appeal form signed by Defendant Paramo on November 7, 2016. SAC at Exh. D at 42-43. The form is acknowledging that Plaintiff's appeal regarding his confrontation with Defendant Navarro is being accepted at the second level of review. Id. Plaintiff also submitted a Staff Complaint Response – Appeal dated November 7, 2016 that was reviewed and signed by Defendant Paramo on November 15, 2016. SAC at Exh. D at 44-45. The appeal was regarding Plaintiff's allegations against Defendant Navarro and was partially granted, but the result of the investigation was a finding that Defendant Navarro did not violate CDCR policy. Id. Given that the appeal and response were submitted and signed by Defendant Paramo after Plaintiff was allegedly abused at the hands of Defendant Navarro, it does not support Plaintiff's claim that Defendant Paramo knew or should have known that Defendant Navarro posed a serious risk to Plaintiff before the alleged confrontation occurred. Additionally, the documents do not mention Defendant Romero and Valdovinos and, therefore, in no way support Plaintiff's claim that Defendant Paramo knew

or should have known that Plaintiff would later be assaulted by Defendants Romero and Valdovinos if placed in Facility C.

Plaintiff also attaches a Classification Committee Chrono signed by Defendant Paramo on January 26, 2017, ten days after Plaintiff's alleged assault in Facility C. Id. at Exh. M at 84. The document notes the ICC's conclusion that Plaintiff be "[r]etain[ed] [in] ASU MAX CUSTODY WG/PG D2/D Effective 1/16/17." Id. at 85. Next, Plaintiff attaches a Staff Complaint Response – Appeal that is dated February 17, 2017 and was signed by Defendant Paramo on March 3, 2017. SAC at Exh. K at 79-80; see also Exh. M at 99-100; and Exh. Q at 133-134. The response notes Plaintiff's allegations regarding Defendants Romero and Valdovinos' behavior in January 2017. Id. It further notes that Plaintiff's allegations "completely changed" from his January 18, 2017 interview to his January 22, 2017 CDCR 602 submission and accordingly finds that Defendants Romero and Valdovinos "did not [] violate CDCR policy." Id. Finally, Plaintiff attaches an October 30, 2017 Second Level Appeal Response Log signed by Defendant Paramo. The log only considers if Plaintiff's previous appeal was properly cancelled and does not discuss anything substantive about Plaintiff's claims. Exh. Q at 120-122. These attachments all postdate Plaintiff's alleged assault at the hands of Defendants Romero and Valdovinos. Accordingly, the attachments do not address either Defendant Paramo's alleged knowledge prior to Plaintiff being placed in Facility C or Defendant Paramo's knowledge concerning Defendant Navarro.

For the reasons set forth above, Plaintiff's SAC does not state an Eighth Amendment claim against Defendant Paramo. Because Plaintiff has twice unsuccessfully attempted to state a constitutional claim against Defendant Paramo, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's Eighth Amendment claim with respect to Defendant Paramo be **GRANTED WITHOUT LEAVE TO AMEND**. See Ramirez, 334 F.3d at 861 (court may dismiss without leave to amend if the pleading cannot be cured by the addition of other facts).

## C. Procedural Dues Process Claim

In the Court's first Report and Recommendation, the Court also recommended "that Defendants' motion to dismiss the Fourteenth Amendment claims against Defendant Paramo be GRANTED WITH LEAVE TO AMEND." ECF No. 31 at 16 (emphasis omitted). In the SAC, Plaintiff

alleges that Warden Paramo's "reckless disregard of training his subordinates lead to procedural due process violations when Plaintiff complained he was fearful for his health and safety which created an unreasonable risk of serious harm to Plaintiff as he complained to Sergeant Kang that he did not want to go to" Facility C. SAC at 13. Defendants contend that Plaintiff's claim should be dismissed because it "is based upon the same factual allegations as his Eighth Amendment claim, and constitutes a classic case of "doubling up" of constitutional claims" and because "Plaintiff's claims must be analyzed under the Eighth Amendment, and not the Fourteenth Amendment." MTD1. at 13. Defendants cite to Albright v. Oliver, 510 U.S. 266, 273 (1994) in support. Id.

As Defendants correctly note, "a plaintiff may not advance a substantive due process claim if a particular Amendment 'provides an explicit textual source of constitutional protection' against government misconduct." Loftis v. Vasquez, 2017 WL 2472845, at *8 (S.D. Cal. June 8, 2017) (quoting Albright, 510 U.S. at 273(Rehnquist, C.J., for plurality) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989))). Here, however, Plaintiff is alleging a procedural due process claim and not a substantive due process claim. Id. (noting that because it was unclear if plaintiff's due process claim was substantive or procedural, the court would evaluate both possibilities and only applying Albright to the substantive due process claim analysis, not the procedural due process analysis); see also SAC at 13 (stating that Defendant Paramo's actions "lead to [p]rocedural due process violations").

"States may under certain circumstances create liberty interests which are protected by the Due Process Clause." Id. (quoting Sandin v. Conner, 515 U.S. 472, 483-84 (1995) (citing Bd. of Pardons v. Allen, 482 U.S. 369 (1987))). "To plead a procedural due process violation, an inmate must allege that the challenged conduct 'present[s] the type of atypical, significant deprivation in which a State might conceivably create a liberty interest.'" Id. (quoting Sandin, 515 U.S. at 486). Here, Plaintiff argues that Defendant Paramo's conduct deprived him of his right to be free of an unreasonable risk of serious harm to his health and safety because he was forced into Facility C even though he informed Defendant Paramo's subordinates that he was afraid for his safety in Facility C. SAC at 13. This allegation does not state a procedural due

17cv882-CAB (BLM)

process claim as prisoners "generally have no liberty interest in a particular cell assignment." Knox v. Castaneda, 2016 WL 11281161, at *10 (S.D. Cal. Nov. 17, 2016) (report and recommendation rejected in part on other grounds) (quoting Samonte v. Frank, 2007 WL 496775, at *10 (D. Haw. Feb. 13, 2007) (citing Pratt v. Rowland, 65 F.3d at 806 (9th Cir. 1995); Williams v. Faulkner, 837 F.2d 304, 309 (7th Cir. 1988) ("Williams has not relied on any Indiana statute or regulation limiting the prison officials' discretion to transfer him to a different cellhouse. Because we are not aware of any such limitation, we hold that Williams cannot make any rational argument in law or fact to support his due process claim."), aff'd sub nom. Neitzke v. Williams, 490 U.S. 319 (1989))). Accordingly, the Court **RECOMMENDS** that Plaintiff's claim that his procedural due process rights were violated when he was placed in Facility C be **DISMISSED WITHOUT LEAVE TO AMEND.**[2] See Id. (citing Luedtke v. Gudmanson, 971 F. Supp. 1263, 1271 (E.D. Wis. 1997) (internal citation omitted) ("[I]n count 12 the plaintiff alleges that he was moved from a regular unit to the 'r-unit' in violation of his federal rights. Prisoners do not have a liberty interest in remaining in a particular cell block or wing of the prison. This claim is frivolous.")).

## II. MOTION TO DISMISS DEFENDANTS CORONADO, CLAYTON, & DEEL ECF No. 62

Plaintiff alleges that Defendants Coronado, Clayton, and Deel were deliberately indifferent to his medical needs and refused to provide him with medical treatment. SAC at 18-20. "Defendants Coronado, Clayton, and Deel move to dismiss the [SAC] because Plaintiff has not alleged that these Defendants were deliberately indifferent to his medical needs." MTD2 at 2. Plaintiff's opposition is a summary of legal standards for motions to dismiss and *pro se* pleadings. Oppo.2.

### A. Complaint Allegations Regarding Defendants Coronado, Clayton, & Deel

Plaintiff alleges that on January 17, 2017, he was in ASU and submitted a sick call slip to

---

[2] While not entirely clear, Plaintiff's Due Process claim appears to implicate only Defendant Paramo. SAC at 10 and 13. To the extent Plaintiff is trying to assert this procedural due process claim against other Defendants, the Court **RECOMMENDS** that the claim be **DISMISSED WITHOUT PREJUDICE** as to all Defendants.

see the nurse. SAC at 18. Plaintiff saw Nurse Coronado to seek treatment for his eye which was swollen shut and impacting his vision, broken pinky finger that was swollen and permanently disfigured, injured left hand, and right ankle, all of which were injured as a result of his January 16, 2017 beating. Id. at 18-19. Defendant Coronado noted that Plaintiff had old injuries and ordered Plaintiff to get x-rays at the triage center. Id. at 18. Plaintiff alleges that Defendant Coronado was deliberately indifferent to his medical care because she failed to provide adequate treatment and she did not refer Plaintiff to a physician until three months later in March 2017. Id. at 19.

Plaintiff was examined by Defendant Clayton, a physician, on March 23, 2017 as a follow-up to a 602 form submitted by Plaintiff. Id. at 19 and Exh. S at 147. Plaintiff alleges that Defendant Clayton failed to provide adequate medical care and that after assessing Plaintiff's pinky finger and wrist, provided "absolutely no treatment" for Plaintiff's injuries. Id. at 19.

After submitting numerous additional sick call slips, Plaintiff was examined by Defendant Deel, a medical doctor, who also failed to provide adequate medical care. Id. at 19-20. Plaintiff alleges that he informed Defendant Deel on April 26, 2017, that Plaintiff would be transferred to California State Prison in Sacramento, that Plaintiff had not received medical care for his injuries suffered at RJD, and that a medical hold should be put in place due to the pain and suffering from Plaintiff's left pinky finger, left hand, loss of vision, and right ankle. Id. at 19-20. Defendant Deel "failed to provide adequate medical treatment." Id. at 20.

Due to the lack of adequate medical care, Plaintiff alleges that he continues to suffer pain shame, humiliation, degradation, emotional distress, embarrassment, and mental distress. Id. at 19-20.

## B. Analysis

A prison official's "deliberate indifference to a prisoner's serious illness or injury" violates the Eighth Amendment's proscription against cruel and unusual punishment. See Clement v. Gomez, 298 F.3d 898, 904 (9th Cir. 2002) (quoting Estelle v. Gamble, 429 U.S. 97, 105 (1976)). A prisoner must satisfy an objective and a subjective requirement to assert an Eighth Amendment violation. Id. The objective requirement is satisfied so long as the prisoner alleges

facts to show that his medical need is sufficiently "serious" such that the "failure to treat [the] condition could result in further significant injury or the unnecessary and wanton infliction of pain." Id. (internal quotation marks and citation omitted); Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc). The subjective component requires the prisoner to allege facts showing a culpable mental state, specifically, "deliberate indifference to a substantial risk of serious harm." Farmer, 511 U.S. at 836. The indifference must be substantial, and inadequate treatment due to malpractice, or even gross negligence does not rise to the level of a constitutional violation. Estelle, 429 U.S. at 106. Indifference "may appear when prison officials deny, delay, or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Tracey v. Sacramento Cnty. Sheriff, 2008 WL 154607, at *2 (E.D. Cal. Jan. 15, 2008) (quoting Hutchinson v. U.S., 838 F.2d 390, 392 (9th Cir. 1988)).

"Mere delay of medical treatment, without more, is insufficient to state a claim of deliberate medical indifference." Robinson v. Catlett, 725 F. Supp. 2d 1203, 1208 (S.D. Cal. July 19, 2012) (quoting Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)). To state a claim for deliberate indifference arising from a delay in treatment, a prisoner must allege that the delay was harmful, although an allegation of substantial harm is not required. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1991), overruled on other grounds by, WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997). Factual allegations indicating that the official "sat idly by as [the prisoner] was seriously injured despite the defendant's ability to prevent the injury" or that the official "repeatedly failed to treat an inmate properly . . . strongly suggests that the defendant's actions were motivated by 'deliberate indifference' to the prisoner's medical needs." Id. at 1060-61. "In sum, the more serious the medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established 'deliberate indifference' on the part of the defendant." Id. at 1061. Isolated incidents relative to a plaintiff's overall treatment suggest no deliberate indifference. Id. at 1060.

///

### 1. Objective Prong

Plaintiff satisfies the objective prong of the test for an Eighth Amendment violation. A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Nawabi v. Wyatt, 2009 WL 3514849, at *7 (C.D. Cal., Oct. 26, 2009) (citing Estelle, 429 U.S. 97 at 104). In considering the seriousness of an alleged medical need, courts should consider whether (1) a reasonable doctor would think that the condition is worthy of comment or treatment; (2) the condition significantly affects the prisoner's daily activities; and (3) the condition is chronic and accompanied by substantial pain. Id. (citing Doty v. County of Lassen, 37 F.3d 540 at 546 n.3) (9th Cir. 1994).

Here, the Court must accept as true that Plaintiff's eye was swollen shut and that he suffered a loss of vision as well as a broken and permanently disfigured left pinky finger, and damage to his left hand and right ankle. SAC at 18-20. A reasonable doctor would likely think that a loss of vision and a broken and disfigured finger would be worthy of comment or treatment. While Plaintiff does not discuss the impact of his injuries on his activities of daily living in his complaint, he does allege that his finger has caused him great pain since it was injured and continues to do so.[3] Id. at 20.

### 2. Subjective Prong

Plaintiff has failed to allege that Defendants Coronado, Clayton, and Deel were deliberately indifferent to a substantial risk of serious harm to Plaintiff.

#### a. Defendant Coronado

Plaintiff alleges that he sought treatment from Defendant Coronado after being assaulted and injured, but that Defendant Coronado was "biased" against him from the start as evidenced by her comment that Plaintiff suffered from "old injuries" and that she failed to provide adequate medical care or a timely referral. SAC at 18-19.

---

[3] The exhibits to Plaintiff's SAC do show that Plaintiff has reported that his injuries affect his activities of daily living. See SAC at Exh. S at 149 and Exh. U at 168, 174, and 177.

17cv882-CAB (BLM)

The exhibits submitted with Plaintiff's SAC show that Plaintiff initially sought medical care on January 17, 2017 for complaints of hand and foot pain, difficulty sleeping, lack of appetite, and eye drainage. <u>Id.</u> at Exh. U at 163 (Health Care Services Request Form). However, when Plaintiff was called for his appointment on January 17, 2017, he refused treatment. <u>Id.</u> at 163 and 165 (Nurses Progress Notes). Despite this, Defendant Coronado ordered x-rays from the radiology department and the x-rays were scheduled for January 19, 2017. <u>Id.</u> at 165. Defendant Coronado noted that Plaintiff showed no signs of distress and was speaking with mental health staff. <u>Id.</u>

Plaintiff had another appointment with Defendant Coronado on January 20, 2017 regarding complaints of eye pain and a possible eye infection. <u>Id.</u> at 164. Defendant Coronado noted that Plaintiff had an "eye [i]njury/ [i]rritation." <u>Id.</u> It is unclear what happened at this appointment as the record indicates "Duplicate 7362 please see 7362 #5825285 for details." <u>Id.</u>

Defendant Coronado examined Plaintiff on March 13, 2017 for hand and finger pain. <u>Id.</u> at 170 (Health Care Services Request Form). <u>Id.</u> Plaintiff requested a left knee brace and two soft wrist braces. Defendant Coronado gave Plaintiff Naproxen. <u>Id.</u> Plaintiff had appointments with Defendant Coronado on March 30, 2017 and April 11, 2017, for hand, finger, and ankle pain, however, Plaintiff refused treatment on both occasions. <u>Id.</u> at 172, 173 (Health Care Services Request Form).

Defendant Coronado started to examine Plaintiff on April 4, 2017 for severe hand and pinky finger pain impacting Plaintiff's activities of daily living. <u>Id.</u> at 168 (Health Care Services Request Form). Plaintiff also complained that his medication was not helping with the pain. <u>Id.</u> Defendant Coronado noted that she was "unable to assess for complete nursing process due to lack of cooperation" and stated that during the appointment, Plaintiff began to raise his voice and threatened to "602" her before eventually being escorted out of the exam room. <u>Id.</u> Defendant Coronado noted that at no time did Plaintiff appear to be in distress. <u>Id.</u> Plaintiff returned to Defendant Coronado on April 5, 2017 for hand, finger, and ankle pain and to request replacement braces, but was again uncooperative. <u>Id.</u> at 169 ((Health Care Services Request

Form).

Defendant Coronado saw Plaintiff again on April 22, 2017 for complaints of hand, finger, and ankle pain. Id. at 176 (Health Care Services Request Form). Plaintiff noted that he wants to see a doctor and receive an unbiased appointment. Id. Defendant Coronado referred Plaintiff to a primary care provider for a routine appointment. Id.

The SAC does not set forth sufficient facts to state a claim for an Eighth Amendment violation against Defendant Coronado as it does not allege facts supporting Plaintiff's claim that Defendant Coronado was deliberately indifferent to Plaintiff's serious medical needs. Iqbal, 556 U.S. at 678 ("unadorned, the-defendant-unlawfully-harmed-me-accusation" is insufficient). Plaintiff's statements in the SAC that Defendant Coronado was biased because she called his injuries "old" and that she failed to provide adequate treatment are too conclusory to state a constitutional violation. Moreover, the few facts stated by Plaintiff indicate that Defendant Coronado referred Plaintiff for x-rays and further treatment [see SAC at 18] and do not support a claim of deliberate indifference. Finally, the exhibits attached to the SAC undercut Plaintiff's claim that Defendant Coronado was deliberately indifferent to a substantial risk of serious harm. The attached medical records show that Defendant Coronado examined or attempted to examine Plaintiff on eight different occasions following his alleged assault. Id. at 168-170, 172, 173, 176. For three of those visits, Plaintiff refused medical treatment. Id. at 163, 165, 172, 173. For two of the visits, Plaintiff was uncooperative and had to be escorted out. Id. at 168-169. During the remaining three visits, Defendant Coronado noted Plaintiff's eye irritation, referred Plaintiff to a visit with his primary care provider, and treated Plaintiff with Naproxen. Id. at 164, 170, 176. After one of the visits during which Plaintiff was uncooperative, Defendant Coronado still ordered x-rays for Plaintiff. Id. at 165. This activity does not support a claim that Defendant Coronado denied, delayed, or intentionally interfered with Plaintiff's medical treatment. In addition, the fact that Defendant Coronado did not refer Plaintiff to his primary care physician until his April 22, 2017 appointment, despite having seen him initially in January, does not support an allegation that she "sat idly by as [the prisoner] was seriously injured despite the defendant's ability to prevent the injury" as Defendant Coronado continued to treat

Plaintiff between January and April and referred Plaintiff for x-rays prior to referring him to his primary care provider.  McGuckin, 974 F.2d at 1060-1061.

Plaintiff has not alleged facts establishing the subjective prong of an Eighth Amendment deliberate indifference to medical care claim.  Because this is the first motion to dismiss filed by Defendant Coronado and it is not clear that Plaintiff cannot allege additional facts to support a deliberate indifference claim, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's Eighth Amendment claim of deliberate indifference to his medical needs against Defendant Coronado be **GRANTED WITH LEAVE TO AMEND**.  See Ramirez, 334 F.3d at 861 (court must grant a *pro se* plaintiff leave to amend his complaint "unless the pleading could not possibly be cured by the allegation of other facts") (citing Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc)); see also Tucker v. City of Santa Monica, 2012 WL 2970587, at *1 (C.D. Cal. July 20, 2012) ("If a complaint is dismissed, a pro se litigant must be given leave to amend unless it is absolutely clear that the deficiencies of the complaint cannot be cured by amendment.")(citing Karim–Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir.1988) and Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir.1987)); Morris v. Barra, 2013 WL 1190820, at *12 (S.D. Cal. Feb. 1, 2013) ("before a pro se civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies.") (citing Karim–Panahi, 839 F.2d at 623–24).

b. Defendant Clayton

Plaintiff alleges that he saw Defendant Clayton after submitting another 602 grievance and that Defendant Clayton failed to provide adequate medical care.  SAC at 19.  Defendant Clayton assessed Plaintiff's pinky finger and left wrist, and "[p]rovided absolutely no treatment" even though he is in charge of general medical care and responsible for arranging specialized medical care outside of the prison.  Id. at 19.

The exhibits submitted with Plaintiff's SAC show that Plaintiff was examined by Defendant Clayton on March 23, 2017 to follow-up on complaints made by Plaintiff in a 602 appeal.  Id. at Exh. S at 147 (Medical Progress Note).  The appeal sought orthopedic boots, a left and right hand brace, a knee brace, an optometry appointment for eyeglasses, a thumb spica brace, and

orthopedic shoes.  Id.  During the appointment, Plaintiff complained about chronic left wrist pain, his injured pinky finger, and his knee brace that was too large.  Id.  Defendant Clayton conducted a thorough examination including Plaintiff's left knee, right and left wrists, and right and left hand and digits.  Id. at 147-148.  Defendant Clayton found that Plaintiff's left knee was unremarkable, but noted that his exam was "hindered by [Plaintiff's] lack of participation."  Id. at 147.  He concluded that there were no abnormalities in Plaintiff's right hand, "no joint swelling or effusions" and a "good range of motion with the digits and wrist."  Id.  While there was some "unlar deviation of the second through fifth digits," there were no signs of arthritis or synovitis.  Id. at 147-148.  Defendant Clayton noted that the examination of the left wrist was unremarkable, but that the left hand showed swelling, redness, and tenderness of the fifth proximal interphalangeal joint.  Id.  Defendant Clayton addressed all of Plaintiff's complaints.  Id. at 148.  He submitted a request to get Plaintiff a correctly sized knee brace, orthopedic boots, and a left hand brace.[4]  Defendant Clayton did not find any indication for a right wrist brace so did not order one but suggested that Plaintiff "may benefit from a target workup for arthropathy."  Id.  He also noted that Plaintiff has an optometry appointment scheduled for April 5, 2017.  Id.  Finally, Defendant Clayton opined on an issue not raised in Plaintiff's 602, noting that the x-rays from March 16, 2017 showed there was no fracture of Plaintiff's left pinky, but advising Plaintiff to continue wearing his splint when active and that the finger would be reevaluated during Plaintiff's follow-up in MedSATS in about six weeks or during his orthopedics appointment.  Id.

As with Defendant Coronado, Plaintiff's allegations in the SAC against Defendant Clayton are conclusory and fail to state facts supporting Plaintiff's claim that Defendant Clayton acted with deliberate indifference.  Moreover, the attached medical records dramatically undermine Plaintiff's claim that Defendant Clayton provided unconstitutional care.  Plaintiff was examined by Defendant Clayton one time several months after his alleged assault, and contrary to his

---

[4] Defendant Clayton noted that Plaintiff had been approved for an orthopedic follow-up which would allow for further evaluation of his left hand.  SAC at Exh. S at 148.

17cv882-CAB (BLM)

allegation that he was provided "absolutely no treatment" from Defendant Clayton, the records show that Defendant Clayton thoroughly examined Plaintiff and ordered additional treatment for Plaintiff based upon the results of that examination. Id. at 147-148. Because this is the first motion to dismiss the claim filed against Defendant Clayton and it is not clear that Plaintiff cannot allege facts to support a deliberate indifference claim, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's Eighth Amendment claim of deliberate indifference to his medical needs against Defendant Clayton be **GRANTED WITH LEAVE TO AMEND**. See Ramirez, 334 F.3d at 861; see also Tucker, 2012 WL 2970587, at *1 (citing Karim–Panahi, 839 F.2d at 623 and Noll, 809 F.2d at 1448); Morris, 2013 WL 1190820, at *12 (citing Karim–Panahi, 839 F.2d at 623–24).

### c. Defendant Deel

Plaintiff alleges that Defendant Deel was informed on April 26, 2017 that Plaintiff was going to be transferred to CSP Sacramento, that Plaintiff had not received "any medical treatment" for his injuries sustained at RJD, and that Plaintiff wanted a "medical hold" placed on him to prevent that transfer "due to the pain and suffering from his left pinky finger, left hand, and loss of vision and right ankle." SAC at 19-20. Plaintiff concludes that Defendant Deel failed to provide adequate medical treatment." Id. at 20.

The exhibits submitted with Plaintiff's SAC show that Plaintiff was examined by Defendant Deel on April 26, 2017 for his chief complaints of left pinky finger pain, right ankle pain, and a polypharmacy review. Id. at Exh. S. at 149 (Medical Progress Note). Defendant Deel noted that Plaintiff had a 2015 surgery on his left hand and that Plaintiff reported he was told that he needed an additional surgery. Defendant Deel also noted that Plaintiff had an orthopedic appointment waiting to be scheduled and that the compliance date was June 8, 2017. Id. Plaintiff reports that his pain was not controlled by Aspirin, Tylenol, non-steroidal medication, or gabapentin and that he was seeking Tylenol 3 or and morphine. Defendant Deel noted that Plaintiff's right ankle was swollen and reportedly interfering with his activities of daily living, but that x-rays taken after his January 2017 altercation showed no evidence of fracture. Id. Defendant Deel's examination revealed that Plaintiff had difficulty putting weigh on his ankle

and that he had limited range of motion of the pinky with 3/5 for strength.  Id.  Defendant Deel increased Plaintiff's gabapentin, discussed Plaintiff's orthopedic appointment, and ordered a repeat x-ray of Plaintiff's right ankle in case the initial x-ray missed evidence of a fracture due to swelling.  Id. at 150.  Defendant Deel told Plaintiff to follow-up in four weeks to discuss his pain level and new x-rays.  Id.

The exhibits attached to the SAC undercut Plaintiff's claim that Defendant Deel was deliberately indifferent to a substantial risk of serious harm.  The records do not support Plaintiff's claim that he did not receive any medical treatment at RJD for his injuries or that he requested a medical hold.  More importantly, the medical records establish that Defendant Deel had one appointment with Plaintiff where she thoroughly examined Plaintiff, increased his pain medication, ordered a second x-ray of his right ankle, and advised Plaintiff to follow-up in four weeks.  Id. at Exh. S. at 150.  There is no allegation or support in the record for the idea that Defendant Deel delayed Plaintiff's treatment or acted with a culpable mental state.  Moreover, Plaintiff's conclusory allegation that Defendant Deel "failed to provide adequate medical treatment" fails to state a claim of deliberate indifference.   Accordingly, the Court **RECOMMENDS** that Defendants' motion to dismiss Plaintiff's Eighth Amendment claim of deliberate indifference to his medical needs against Defendant Deel be **GRANTED WITH LEAVE TO AMEND**.  See Ramirez, 334 F.3d at 861; see also Tucker, 2012 WL 2970587, at *1 (citing Karim–Panahi, 839 F.2d at 623 and Noll, 809 F.2d at 1448); Morris, 2013 WL 1190820, at *12 (citing Karim–Panahi, 839 F.2d at 623–24).

## III. __MOTION TO DISMISS DEFENDANT GEISINGER ECF No. 69__

Plaintiff alleges that Defendant Geisinger was deliberately indifferent to his medical care.  SAC at 19.  Defendant Geisinger seeks to dismiss the claims against her as Plaintiff's allegations of "deliberate indifference" against her do not state a cause of action under 42 U.S.C. Section 1983.  MTD3 at 9; see also Reply.  Defendant Geisinger contends that Plaintiff's undisputed medical records support a dismissal of the SAC without leave to amend "as the records establish there is no set of facts which Plaintiff may allege upon which relief may be granted."  Reply at 3.

17cv882-CAB (BLM)

## A. Complaint Allegations Regarding Defendant Geisinger

Plaintiff alleges that he saw Defendant Geisinger, a Physician's Assistant, on March 10, 2017 in response to his submission of a Health Care Appeal. SAC at 19. Plaintiff alleges that Defendant Geisinger "was more concerned about Plaintiff utilizing the CDCR HC 602 SYSTEM [sic] instead of providing any treatment" and that her "failure to provide adequate treatment to help Plaintiff control the pain shows deliberate indifference." Id.

## B. Analysis

As with the previous Defendants, Plaintiff's conclusory allegations against Defendant Geisinger are insufficient to state a claim for a constitutional violation. Plaintiff does not state any facts supporting a claim that Defendant Geisinger acted with deliberate indifference. Moreover, the medical records attached as exhibits to the SAC undercut Plaintiff's claim that Defendant Geisinger acted with deliberate indifference.

Plaintiff's exhibits to the SAC show that he saw Defendant Geisinger on March 10, 2017 for a follow-up on his polypharmacy review, his return from the Mental Health Crisis Bed, and his 602 appeal. SAC at Exh. S at 142. Defendant Geisinger reported that Plaintiff (1) discussed his desire for an optometry appointment, (2) requested a CT scan of his finger that was injured on January 16, 2017, (3) requested a medical hold until surgery and physical therapy are completed (although he had not yet seen orthopedics for his wrist which he claimed needed surgery), (4) requested expedited surgery, (5) sought a referral to pain management for narcotics, and (6) requested monetary compensation for his medical issues. Id. Defendant Geisinger discussed the 7362 form with Plaintiff and noted that he had not submitted the form for his requests concerning optometry and a CT scan or any 7362 form at all in the past thirty days since returning to RJDC. Id. Plaintiff was agitated during the appointment with Defendant Geisinger and frequently raised his voice and cursed. Id. Defendant Geisinger examined Plaintiff and noted no abnormalities other than swelling and decreased range of motion in his left pinky and decreased range of motion in his left wrist. Id. at 143. Defendant Geisinger reviewed Plaintiff's Medication Administration Record and completed and documented a polypharmacy review. Id. at 143. Defendant Geisinger reviewed Plaintiff's left wrist x-ray from January 19,

2017 and determined that narcotic pain medication would not provide significant benefit for Plaintiff, but recommended increasing his gabapentin. Id. She also referred Plaintiff to Optometry and to Orthopedics for further evaluation of his finger pain, prescribed Ibuprofen "600 mg t.i.d. p.r.n. pain" Id. Defendant Geisinger also ordered lab work to test Plaintiff's Vitamin D levels, discussed all of Plaintiff's 602 issues with him and advised him that the results of his follow-up appointments with Orthopedics and Optometry would govern whether he needed surgery or a medical hold. Id. at 144. A Primary Care Provider Note from March 17, 2017 signed by Defendant Geisinger shows that Plaintiff was not seen that day due to time restraints. Id. at 145

The exhibits attached to the SAC do not support Plaintiff's claim that Defendant Geisinger was deliberately indifferent to a substantial risk of serious harm. Defendant Geisinger had one appointment with Plaintiff where she thoroughly examined Plaintiff, reviewed his previous x-ray, increased his pain medication, referred Plaintiff to Orthopedics and Optometry, and ordered lab tests for further assessment. Id. at 143-144. There is no allegation or support in the record for a finding that Plaintiff has stated a claim that Defendant Geisinger delayed Plaintiff's treatment or acted with a culpable mental state. Plaintiff's conclusory allegation that Defendant Geisinger's "failure to provide adequate treatment to help Plaintiff control the pain shows deliberate indifference" fails to state facts supporting a claim of deliberate indifference. Accordingly, the Court **RECOMMENDS** that Defendant's motion to dismiss Plaintiff's Eighth Amendment claim of deliberate indifference to his medical needs against Defendant Geisinger be **GRANTED WITH LEAVE TO AMEND**. See Ramirez, 334 F.3d at 861; see also Tucker, 2012 WL 2970587, at *1 (citing Karim–Panahi, 839 F.2d at 623 and Noll, 809 F.2d at 1448); Morris, 2013 WL 1190820, at *12 (citing Karim–Panahi, 839 F.2d at 623–24).

## IV. **CONCLUSION**

For the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Court issue an order: (1) approving and adopting this Report and Recommendation, (2) granting Defendants' Motion to Dismiss Defendant Paramo without leave to amend, (3) granting Defendants' Motion to Dismiss Plaintiff's Procedural Due Process claim without leave to amend,

17cv882-CAB (BLM)

(4) granting Defendants' Motion to Dismiss Defendants Coronado, Clayton, and Deel with leave to amend, and (5) granting Defendant's Motion to Dismiss Defendant Geisinger with leave to amend.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than <u>November 7, 2018</u>**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with this Court and served on all parties **no later than <u>November 28, 2018</u>**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998).

Dated: 10/12/2018

Hon. Barbara L. Major
United States Magistrate Judge

17cv882-CAB (BLM)